673 So.2d 646 (1996)
STATE of Louisiana
v.
Weldon LEAGEA.
No. 95 KA 1210.
Court of Appeal of Louisiana, First Circuit.
May 10, 1996.
*648 Doug Moreau, District Attorney, Wick Cooper, Baton Rouge, for AppelleeState of Louisiana.
Gail Ray, Baton Rouge, for Appellant Weldon Leagea.
Before LeBLANC, WHIPPLE and FOGG, JJ.
LeBLANC, Judge.
Weldon Leagea was charged by bill of information with two counts of possession of a firearm by a convicted felon, violations of La.R.S. 14:95.1. He pled not guilty and, after trial by jury, was convicted on both counts. The trial court sentenced him to serve a term of ten years imprisonment at hard labor with credit for time served on count one and a term of six years imprisonment at hard labor with credit for time served on count two, to be served consecutively. Both sentences were without benefit of probation, parole or suspension of sentence. Defendant has appealed, urging five assignments of error.[1]

Facts
Defendant stipulated that he was previously convicted of simple robbery.[2] On October 4, 1993, defendant pawned a .45 caliber Ruger pistol at the Pelican Pawn Shop on Plank Road in Baton Rouge. The documents completed by the store clerk, Mr. Julian Velez, included a general description of defendant's height, weight, sex and race, as well as his address and driver's license number. Defendant received $110.00 during the transaction for the pistol. On December 23, 1993, defendant returned to the pawn shop and redeemed *649 the pistol. Mr. Velez testified that the pawn shop was required to send a report to the police department containing a list of everything they take in. Officer Gary Stone with the Burglary Division of the Baton Rouge Police Department testified that, while he was reviewing the computerized list of pawn tickets maintained by the police department, he noticed the transaction involving defendant. Knowing that defendant had a previous felony conviction, Officer Stone investigated the matter and ultimately arrested defendant for the charged offense.

Assignment of Error Number 1
In defendant's first assignment of error, he cites as error the trial court's ruling that he failed to establish a prima facie case that the prosecution excluded prospective jurors Betty Williams and Renee Bailey on the basis of race in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). At the time of defendant's challenge, the state had excluded another juror, Michael Seals, who was excluded by the defense also. Defendant submits that he made a prima facie showing of purposeful discrimination of members of a minority race, and he argues that the reasons voluntarily given by the prosecutor to the court for challenging Ms. Williams and Ms. Bailey were not adequate. Further, defendant argues that it was error for the trial court to rely on the fact that three of the seven jurors seated at the time of the Batson challenge were black.
In Batson, the United States Supreme Court adopted a three-step analysis to determine whether or not the constitutional rights of prospective jurors have been infringed by impermissible discriminatory practices:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race.[3] Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Hernandez v. New York, 500 U.S. 352, 358-359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) [citations omitted; footnote ours].
The second step of this process does not demand an explanation that is persuasive, or even plausible. Purkett v. Elem, ___ U.S. ___, ___, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). Because a trial judge's findings pertaining to purposeful discrimination turn largely on credibility evaluations, such findings ordinarily should be entitled to great deference by a reviewing court. Batson v. Kentucky, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. Reasons offered to explain the exercise of peremptory challenges should be deemed race-neutral unless a discriminatory intent was inherent in those reasons. See Hernandez v. New York, 500 U.S. at 359, 111 S.Ct. at 1866.
Herein, defendant entered a Batson objection at the conclusion of voir dire examination of the second panel of six prospective jurors. From this panel, one individual was chosen to serve on the jury. Prior to ruling on whether or not defendant had made a prima facie showing of intentional discrimination based on race, the trial court inquired whether the prosecution would voluntarily provide neutral reasons for the peremptory challenges. In response[4], the prosecutor stated:
As for Ms. Williams, she indicated when I talked to her about guns, she indicated that her husband has a gun, but she doesn't fool with guns. He keeps it locked up. So in my opinion, she would not be in a position to evaluate the type of possession *650 that's involved in here. Also, when I discussed with her the issues of possession, she seemed a little unclear on it. And that was the reason why I challenged her peremptorily because possession is going to be such a strong issue in this particular case. As for Ms. Bailey, she indicated that she had a cousin that was convicted of rape 15 to 20 years ago. That gave me a cause for concern. She was also a teacher for the second grade, and it has been my experience that teachers generally tend to be more forgiving and tend to vote [more] sympathetically than other individuals. And those are the reasons that I challenged those two.
Agreeing with the prosecutor, the trial court stated that "you may disagree with his peremptory use of challenges, but I fail to see that you have established a prima facie case that he ... is excluding jurors purely on a racial basis and that that [sic] [a] prima facie case has not been established."
Defense counsel noted for the record her assertion that other prospective jurors had responded with answers similar to those volunteered by the prosecution. Even assuming, arguendo, that similar responses were given by other prospective jurors, the fact that some were accepted by the state and Ms. Williams and Ms. Bailey were excused by the state does not in itself show that the explanation for excusing Ms. Williams and Ms. Bailey were a mere pretext for discrimination. The accepted jurors may have exhibited traits which the prosecutor reasonably could have believed would have made these individuals desirable as jurors. See State v. Collier, 553 So.2d 815, 822 (La.1989).
Our careful review of the entire record of the voir dire proceedings fails to disclose any error in the ruling of the trial court that the defense failed to establish a prima facie case of discrimination. Further, even if we were to find that a prima facie case was established by defendant, defendant has failed to carry his burden of proving purposeful discrimination in light of the voluntary, race-neutral reasons offered by the state. Nor do we find anything in this record to otherwise show that defendant proved purposeful racial discrimination by the state in its exercise of peremptory challenges.
This assignment lack merit.

Assignment of Error Number 2
In his second assignment of error, defendant argues that the trial court committed error when it denied his motion to suppress the identification of defendant. Specifically, it was revealed at a pretrial hearing on the matter that Mr. Brad Boring, the manager at the Pelican Pawn Shop on Plank Road at the time in question, was subpoenaed for August 3, 1994. He was directed to sit in a courtroom and "see if [he] recognized anybody." Three men wearing orange suits came into the room. Mr. Boring recognized defendant and so informed the prosecutor. Defendant maintains that this identification was an impermissible line-up that should be suppressed.
Despite the existence of a suggestive pretrial identification, an in-court identification may be permissible if there does not exist a "very substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977). When a suggestive identification procedure is asserted, courts must look to several factors to determine, from the totality of the circumstances, whether a substantial likelihood of misidentification existed. The factors include: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation. State v. Davis, 92-1623, p. 16 (La. 5/23/94), 637 So.2d 1012, 1022, cert. denied, ___ U.S. ___, 115 S.Ct. 450, 130 L.Ed.2d 359. Moreover, even if it is established that the pretrial identification of the accused is the product of impermissible suggestion, the in-court identification is admissible if it has an independent basis. State v. Sylvas, 558 So.2d 1192, 1199 (La.App. 1st Cir.1990).
In the instant case, identification is not at issue. Defendant admits that he signed the pawn ticket to pawn the pistol. *651 Defendant was fingerprinted in open court; his prints were compared and matched to those on file with the Louisiana State Police from a previous conviction. The driver's license number on the pawn ticket matched defendant's driver's license number on file with the office of motor vehicles. Officer Gary Stone also identified defendant in open court.
Mr. Boring testified that defendant was a regular customer. He also stated that he had an independent recollection of what defendant looked like, noting that Ruger had just put its .45 caliber pistol on the market, and the pistol in this case was still in the box. Thus, it is not unreasonable to conclude that Mr. Boring had an independent recollection of this defendant. Our review of the record convinces us that the totality of the circumstances does not include a substantial likelihood of misidentification. Further, the record amply demonstrates that the identification made by Mr. Boring was based on his independent observation and memory; therefore, this assignment of error is without merit.

Assignment of Error Number 3
Defendant argues that the trial court erred when it overruled the defense objection to a statement in the testimony of a state witness that the state failed to disclose during discovery. At trial, defendant objected to Mr. Boring being allowed to testify that defendant made an inculpatory statement that he wanted to pawn a gun.
La.C.Cr.P. art. 716(B) provides:
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
Nevertheless, where substantial compliance with the article's purpose has been met through other pretrial pleadings, the technical deficiency of the notice may not bar introduction of the statement. The purpose of giving defendant sufficient notice of each inculpatory statement the state intends to use is to permit defendant a fair opportunity to meet the issue. If a defendant is misled by state responses relative to the state's possession of an oral inculpatory statement and is lulled into a misapprehension of the strength of the state's case and suffers prejudice when the statement is subsequently introduced at trial, basic unfairness results, which constitutes reversible error. State v. Jackson, 450 So.2d 621, 630 (La.1984).
In the instant case, at the hearing on the motion to suppress identification, Mr. Boring testified that defendant approached him and stated, "Brad, I want to pawn my gun." At trial the following day, defendant entered a general objection to this statement by Mr. Boring. The trial court overruled the objection; and Mr. Boring testified that defendant said, "Brad, I want to pawn a gun."
Given that the state provided adequate notice of the statement at the pretrial hearing, defendant suffered no prejudice, and the technical deficiencies of the state's pretrial notice should not have barred introduction of the statement. Even assuming there was error in allowing the testimony in evidence, any error in its admission is harmless beyond a reasonable doubt. Further, there is no prejudice because defendant had the opportunity to request a continuance following notice of the statement at the pretrial hearing to prepare additional defenses to the statement; however, defendant did not do so. Nor did the defense demonstrate how this statement prejudiced its case; defendant merely provides a conclusory statement of prejudice in brief without any explanation. Hence, the trial judge did not err in allowing the testimony.

Assignment of Error Number 4
In this assignment, defendant contends the trial court erred by imposing excessive sentences. Defendant argues that the imposition of the maximum penalty, i.e. ten years on count one, and making the sentences run consecutively, resulting in sixteen total years of imprisonment, was excessive under the circumstances of this case.
*652 Defendant's penalty exposure for each of the instant offenses was imprisonment at hard labor for a maximum of ten years. See La.R.S. 14:95.1(B) (prior to amendment by 1995 La.Acts, No. 987, § 1). Herein defendant received consecutive sentences of ten years and six years.
In this case, the trial court ordered and received a presentence investigation report (PSI). The PSI included a sentencing guidelines report reflecting that, under the advisory sentencing guidelines promulgated by the Louisiana Sentencing Commission, the applicable sentencing range of incarceration for the instant offenses was 54-66 months for concurrent sentences and 68-80 months for consecutive sentences. However, the PSI recommended "the maximum sentence allowable by law."
In imposing the instant sentences, the court gave the following reasons:
[T]he court will continuewill give its aggravating as well as mitigating reasons on the record why the court is sentencing as she is. The offenses involved separate and distinct occurrences and not part of the same incident or transaction. The defendant has been involved in similar crimes not counted in the guidelines. Defendant appearsseems to be a violent or unstable person and a danger to the public. Defendant was employed, but has a poor work record. Defendant has a very significant prior criminal history of violent crime. Defendant has been on probation and parole two times before and has done pro [sic]poorly. He's due to be revoked. He's classified as a second felony offender with arrests for 33 different crimes. Of which, 29 were felonies or crimes against the person. The defendant has 12 convictions, 8 of them felonies or crimes against the person and/or of violence. The defendant has not shown remorse and has not accepted any responsibilities for his actions. He blames his involvement on trying to help a friend pawn a gun. The defendant has twice sought treatment for drug and alcohol abuse, but appears to have a continuing drug and alcohol problem, as he failed to complete either program. Defendant has no minor su [sic] dependents that he supports or helps to support, although he has three children. Defendant is in need of custodial environment or correctional treatment. The defendant appears to be [a] career criminal and/or chronic offender. Defendant was on parole at the time of this offense. The defendant has very little education and is unable or unwilling to be a contributing member of society at this time. The defendant has already received three other hard labor sentences. He's been on probation and parole. He's been in the D.A.'s diversion program, and nothing has slowed his criminal behavior. The defendant was first arrested for gun possession when he was only 13 years old. He was later arrested for two counts of aggravated battery at age 16 and, finally, for armed robbery at 19. He has arrests for 16 crimes against the person or crimes of violence. Prior leniency and drug rehab. has not benefited the defendant at all. With his record he should have known to stay away from guns. So, even if his story in this case was believable, which the jury did not find it to be believable, he did know he was a convicted felon on good-time release and that it would be very stupid of him to sign over a gun to a pawn dealer. The defendant has shown an utter disregard for the law as well as the rights of others. On the contrary, he's shown a clear propensity for a violent and criminal life-style; and the only way to slow him down and protect those he preys on is to lock him up for a long time. Probation and parole describes his profile as an alarming pictureand I quote thisan alarming picture of a real criminal at heart. His history, together with his attitude and his denial and his status as a multiple felonyexcusefelony offender, warrants significant jail time. All right. Therefore, at this time this court will sentence him as follows. As to count I, this court sentences him to ten years' [sic] hard labor, without the benefit of probation or parole or suspension of sentence; as to count II, six years' [sic] hard labor, without the benefit of probation or parole or suspension of sentence, consecutive to count I and consecutive to each other and any parole violation time.
*653 Defendant was sentenced on January 20, 1995. Therefore, the advisory sentencing guidelines promulgated by the Louisiana Sentencing Commission (effective January 1, 1992) were applicable to his sentencing.[5] Defendant timely filed a motion to reconsider sentence, which the trial court denied.
From our review of the record we are convinced that the trial court considered the Commission's guidelines and adequately stated the considerations taken into account as well as the factual basis for imposition of defendant's sentences. Consequently, under State v. Smith, 93-0402, p. 3 (La. 7/5/94), 639 So.2d 237, 240 (on rehearing), we are limited to a review of the sentence for constitutional excessiveness without regard as to whether the trial court employed or deviated from the guidelines.
La.C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
As noted in the official revision comment to La.C.C.P. 883, the sentencing judge's authority to impose either concurrent or consecutive sentences is well recognized. In his brief to this court, defendant contends the actions in this case, although some months apart, constituted parts of a common event or plan, i.e., the pawning of a handgun. However, in sentencing defendant, the trial court specifically stated that in its view, the offenses involved separate and distinct occurrences and not part of the same incident or transaction. Even assuming arguendo that the trial court erred in its determination that "[t]he offenses involved separate and distinct occurrences and [were] not part of the same incident or transaction", we nonetheless find the trial court's imposition of consecutive sentences was justified herein and is not constitutionally excessive. Consecutive sentences are justified when the offender poses an unusual risk to public safety. State v. Hunter, 628 So.2d 57, 63 (La.App. 1st Cir. 1993), writ denied, 93-2837 (La. 2/11/94), 634 So.2d 372.
This Court has stated that the maximum sentence may be imposed only in cases involving the most serious offenses and worst offenders. State v. Hunter, 628 So.2d at 63. We find that the imposition of maximum sentence for count I was justified by the same reasons which support the imposition of consecutive sentences. As noted by the trial court, the defendant obviously is a hardened, career criminal.
Based upon the entirety of the record and particularly the sentencing reasons articulated by the trial court, we find no error in the court's determination that these sentences were appropriate for this defendant and these offenses. Nor do we find the sentences excessive because the court ordered them served consecutively. The sentencing record supports their imposition for this defendant who clearly poses an unusual risk to public safety. The total amount of the sentences, sixteen years, is not shocking to our sense of justice; accordingly, this assignment is meritless.

Assignment of Error Number 5
In his final assignment of error, defendant claims that the evidence presented to the jury was insufficient to support the verdicts of guilty beyond a reasonable doubt. He primarily relies on testimony by a defense witness, Darryl Hayes, that defendant was pawning the pistol for him and never physically possessed it. Defendant testified that he went with Michael Harris, a.k.a. "Pretty Mike," who had bought the pawn ticket from Hayes, to redeem the pistol. Defendant stated *654 that he had no intention of possessing a firearm.
The proper method to raise the issue of insufficient evidence is by motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. See State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The record does not indicate defendant made such a motion, but it does contain an assignment of error which alleges the evidence was not sufficient. Therefore, this Court will review the sufficiency of the evidence, although this issue was not properly raised. In doing so, we will consider the evidence as though a motion for post-verdict judgment of acquittal had been filed under La.C.Cr.P. art. 821.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (Emphasis in original), See also La.C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
Contrary to defendant's version of the events, there was testimony that defendant possessed a firearm. Mr. Boring testified that there was no one else standing at the counter with defendant when he pawned the pistol. He stated that defendant showed him the pistol and requested $100.00 for it. He also testified that when defendant redeemed the pistol, it was given to defendant, and he walked out of the store with it.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Gordon, 582 So.2d 285, 292 (La.App. 1st Cir.1991). In returning these guilty verdicts, the jury obviously believed the testimony of Mr. Boring and the other state witnesses and rejected the testimony of the defense witnesses. The credibility of the witnesses' testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
Notwithstanding defendant's assertions to the contrary, the testimony clearly established that he physically possessed a firearm. Further, he held himself out as the owner of the pistol to the pawn shop for a period in excess of two months. Viewing all of the evidence in the light most favorable to the state, a rational trier of fact could have concluded beyond a reasonable doubt that defendant perpetrated the instant offenses of possession of a firearm by a convicted felon. Accordingly, this assignment is meritless.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Although defendant raised additional arguments in a supplement to his original brief, defendant's motion to file the supplement was denied as it was not received by the Court until after the case had been submitted.
[2] The record reflects that defendant actually pled guilty to first degree robbery and two counts of simple robbery in the same plea agreement.
[3] The scope of a Batson claim has been extended to other "suspect classifications," such as gender. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, ___, 114 S.Ct. 1419, 1428, 128 L.Ed.2d 89 (1994).
[4] We note that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Hernandez v. New York, 500 U.S. at 359, 111 S.Ct. at 1866. However, the situation in the instant case is distinguishable, because after the prosecutor offered race-neutral explanations, the trial court ruled that defendant had not established a prima facie case of discrimination.
[5] La.C.Cr.P. art. 894.1 was amended by 1995 La. Acts No. 942, § 1, effective August 15, 1995. The amendment included a deletion of the former requirement that a trial court consider the guidelines promulgated by the Louisiana Sentencing Commission.