540 So.2d 520 (1989)
STATE of Louisiana
v.
Marshall PAYNE (Two Cases).
Nos. 88 KA 0543, 88 KA 0544.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
Writ Denied June 16, 1989.
*521 Bryan Bush, Dist. Atty. by Suzan Ponder, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Brady Jones, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before WATKINS, CRAIN and ALFORD, JJ.
WATKINS, Judge.
Marshall Payne was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. He pled not guilty, was tried by jury and was found guilty as charged. Defendant was charged, adjudged and sentenced as a Second Felony Habitual Offender. The trial court sentenced defendant to imprisonment at hard labor for a term of forty-five years, without benefit of parole, probation or suspension of sentence. Defendant has appealed, urging eight assignments of error, to-wit:
1. The trial court erred by denying defendant's motion to suppress.
2. The trial court erred during the habitual offender hearing by overruling defendant's objection to the introduction of photocopies of documents not certified in accordance with LSA-R.S. 15:529.1.
3. The trial court erred during the habitual offender hearing by overruling defendant's objection to state exhibits 2 A, B, C and D.
4. The trial court erred during the habitual offender hearing by overruling a defense objection to the fingerprinting of defendant in open court.
5. The trial court erred by adjudicating defendant a habitual offender.
6. The trial court erred by overruling defendant's motion for a post verdict judgment of acquittal.
7. The trial court erred by accepting the jury's verdict based upon insufficient evidence.
8. The trial court erred by imposing an excessive sentence and failing to adequately comply with the sentencing guidelines contained in LSA-C.Cr.P. art. 894.1.
In brief, defendant expressly abandoned assignments of error numbers two, three and five.
The testimony of Eloise Bethley, the victim, revealed that shortly after midnight on February 7, 1987, she drove her 1979 gray Ford Fairmont into the parking lot of the Weller Avenue Grocery Store in Baton Rouge. Bethley exited her car and proceeded to use a pay telephone located outside the store. Bethley's car was parked with its front facing her. Bethley left the car's motor running and the headlights illuminated.
While she was using the telephone, two men walked up to her. One of the men, who Bethley later positively identified as defendant, was armed with a large butcher knife. According to Bethley, defendant told her not to say anything; and the other man "mashed down the button" on the telephone, took two gold chains from around her neck, and asked her for her money. Bethley removed some money she had in her pocket and gave it to defendant's co-perpetrator. Bethley testified that the perpetrators told her not to "move" until they left the premises. The perpetrators got inside Bethley's car and drove down Weller Avenue toward Plank Road with defendant driving. Bethley observed the perpetrators stop the car and pick up another individual, before apparently continuing their flight from the crime scene. Thereafter, Bethley ran to a nearby residence, and the incident was reported to the police.
In the meantime, at 12:56 a.m., Corporal William Broadhurst of the East Baton Rouge Parish Sheriff's Office was traveling southbound in his police unit on Plank Road in the vicinity of Weller Avenue. Broadhurst observed defendant attempting to back up a gray Ford automobile that had apparently crashed into a pole.
*522 When Broadhurst turned his unit around and went back to the wrecked vehicle, he observed defendant crouched down between the opened door and the driver's seat of the vehicle. Defendant stood up and started walking away. Broadhurst told defendant to stop, but defendant continued to walk. During Broadhurst's pursuit of defendant, defendant began running and ignored continued orders by Broadhurst to stop. After defendant's repeated efforts to elude the officer, Broadhurst apprehended defendant, handcuffed him and (while handcuffing defendant) orally advised him of his Miranda rights. Defendant was then placed in the rear seat area of Broadhurst's police unit, and Broadhurst drove the unit back to the scene of the wrecked Ford.
Officer Percy O'Neal of the Baton Rouge City Police Department was dispatched to the scene of the wrecked Ford. There, he observed the wrecked vehicle and defendant. O'Neal also talked to Broadhurst. However, he left the accident scene in response to a call in regard to the armed robbery of Bethley.
After O'Neal talked to Bethley, he took her to the accident scene, where defendant was being detained by Broadhurst. Bethley immediately identified the wrecked vehicle as belonging to her and identified defendant as one of the perpetrators of the instant offense. O'Neal then advised defendant of his rights, and Broadhurst transported defendant to the first district police precinct. According to Broadhurst, on the way to the first district, defendant made a statement to him that he had held the knife on the victim and that he had taken her car.
ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant contends that the trial court erred by denying his motion to suppress statements he made to the police. Initially, defendant argues that he did not make any statements. Defendant further argues that, even if he did make the statements, the statements should not have been admitted into evidence because he had not been advised of his Miranda rights before making the statements and the probative value of the statements was outweighed by the prejudice caused to him.
Initially, we note that the only evidence of any statements made by defendant that was introduced into evidence at trial consisted of Broadhurst's testimony during the state's rebuttal, which was offered to impeach defendant. At trial, defendant took the stand in his own defense; and, during his cross-examination, he expressly denied he had made any statement to Broadhurst. Thereafter, on rebuttal, Broadhurst testified that, after he advised defendant of his Miranda rights, defendant made the statement (on the way to the first district) that he was the man who held the knife on the victim.
A defendant's statement to the police which is without the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), may properly be used to impeach the defendant's credibility. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). See also State v. McCarty, 421 So.2d 213 (La.1982); State v. Felde, 422 So.2d 370 (La.1982), cert. denied, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983); and State v. Guillot, 470 So.2d 360 (La. App. 5th Cir.), writ denied, 476 So.2d 347 (La.1985). Nevertheless, the state must establish that the defendant's statement was given freely and voluntarily before it can be introduced to impeach the defendant. See State v. McCarty, 421 So.2d at 215.
In the instant case, the testimony of Officers O'Neal and Broadhurst established that defendant's statement to Broadhurst was made after defendant was advised of his Miranda rights by both officers. Furthermore, Officer Broadhurst testified at the suppression hearing that he did not use force, physical violence, coercion, or threats to obtain defendant's statement; and defendant's testimony at the suppression hearing and at trial was that he had not been threatened, beaten or promised anything for a statement. Hence, the trial court did not err by allowing the state to introduce Officer Broadhurst's testimony *523 as to the statement defendant made to the officer.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. FOUR:
By means of this assignment, defendant claims that the trial court erred during the habitual offender hearing by overruling his objection to the fingerprinting of him in open court. He argues that the act of fingerprinting him in open court was a violation of his privilege against self-incrimination.
During the habitual offender hearing, state witness Ettie Travis qualified and was accepted by the court as an expert in rolled fingerprints. Thereafter, as part of the state's proof of defendant's second felony habitual offender status, Travis was allowed to fingerprint defendant in open court, compare those fingerprints with other fingerprints of a Marshall Payne previously convicted of the predicate felony relied on by the state and conclude that defendant was the same individual.
The taking of defendant's fingerprints in open court did not violate defendant's privilege against self-incrimination. State v. Woodard, 387 So.2d 1066 (La.1980); State v. House, 320 So.2d 181 (La.1975). Hence, this assignment is meritless.
ASSIGNMENTS OF ERROR NOS. SIX AND SEVEN:
By means of these assignments, defendant contends that the evidence was insufficient to convict him of armed robbery. More specifically, defendant argues the evidence did not prove beyond a reasonable doubt that he took anything of value from the person of another or anything in the immediate control of another.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Tate, 506 So.2d 546 (La. App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). This standard is codified in LSA-C.Cr.P. art. 821.
As defined in LSA-R.S. 14:64, armed robbery consists of the following elements: (1) the "taking" (2) "of anything of value belonging to another" (3) "from the person of another or that is in the immediate control of another," (4) "by use of force or intimidation," (5) "while armed with a dangerous weapon."
The state may prove a defendant's guilt by establishing that he was a principal in the crime. LSA-R.S. 14:24 provides as follows:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
However, all principals are not automatically guilty of the same grade of the offense. State v. Holmes, 388 So.2d 722 (La.1980). Depending upon the mental element proven at trial, a principal may be convicted of a higher or lower degree of the crime. 388 So.2d at 726.
Armed robbery is a general intent crime. See LSA-R.S. 14:64.[1] In general intent *524 crimes, the criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. State v. Holmes, 388 So.2d at 727.
Initially, we note that the testimony of the victim alone is sufficient to prove the elements of an offense. State v. Orgeron, 512 So.2d 467 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988). In finding defendant guilty of the instant offense, it is obvious the jury believed the victim. The credibility of the victim's testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Tate at 551. Herein, the victim's testimony established that, while she was using a pay telephone, she was approached by defendant and a co-perpetrator. Defendant was armed with a large knife and told the victim not to say anything. The co-perpetrator took two gold chains from the victim's neck; and he asked for her money which she gave to him. According to the victim, the perpetrators told her not to "move" until they left. Both perpetrators then got inside the victim's car, and defendant drove the car from the crime scene.
Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that the state proved all the elements of armed robbery and that defendant was a principal to the offense.
These assignments lack merit.
ASSIGNMENT OF ERROR NO. EIGHT:
By means of this assignment, defendant contends that the trial court erred by imposing an excessive sentence and failing to adequately comply with the sentencing guidelines contained in LSA-C.Cr.P. art. 894.1.
Article I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So. 2d 762 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Tate, 506 So.2d at 552. In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, 367 So.2d at 767. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether or not the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980). A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475 (La.1982).
A trial court's reasons in imposing sentence, as required by LSA-C.Cr.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. State v. Christy, 509 So.2d 829 (La. App. 1st Cir.), writ denied, 513 So.2d 296 (La.1987). The trial court need not recite the entire checklist found in LSA-C.Cr.P. art. 894.1. However, the record must reflect that the court adequately considered the guidelines. State v. Davis, 448 So.2d 645 (La.1984). Even when the trial court has not complied with LSA-C.Cr.P. art. 894.1, this Court need not remand the case for resentencing, unless the sentence imposed is apparently severe in relation to the particular offender or the offense committed. State v. Davis, 448 So.2d at 653.
As a habitual offender, whose second felony conviction was for armed robbery, defendant's sentencing exposure was imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence for a minimum of thirty-three years and a maximum of one hundred ninety-eight years. LSA-R.S. 14:64 and 15:529.1 A(1). Herein, defendant was sentenced to imprisonment at hard labor, without benefit of parole, probation or suspension *525 of sentence for a term of forty-five years.
The record reflects that the trial court ordered a presentence investigation report in this case and took its contents into consideration in imposing sentence. The presentence investigation report revealed that defendant was born on June 12, 1963, and that the instant offense was committed approximately nine months after defendant's release from prison. The report concluded with a recommendation that defendant receive a lengthy period of incarceration for the instant offense.
Immediately prior to imposing sentence, the trial court offered defendant an opportunity to make a statement and present information to the court in regard to defendant's sentence. Defendant shunned the opportunity.
Thereafter, in imposing sentence, the trial court stated that it had taken defendant's age into consideration as a factor in mitigation but that it had found "very little" other mitigating factors. The court noted that the victim was placed in fear of great bodily harm. She was accosted by two individuals at knifepoint, sometime after midnight while she was using a pay telephone. The court further noted that defendant was the perpetrator who was armed with the knife, that jewelry was taken during the robbery and that the perpetrators also took the victim's car. The car was the victim's sole means of transportation; and it was wrecked, resulting in a total loss, which thereby caused considerable financial hardship to the victim. Additionally, the court made specific reference to defendant's prior criminal convictions for possession of marijuana, simple battery and possession of pentazocine.
In our view, the trial court adequately complied with the sentencing guidelines contained in LSA-C.Cr.P. art. 894.1. Even assuming, arguendo, that the trial court failed to adequately comply with those guidelines, the sentence imposed is not apparently severe in relation to defendant or the offense committed. Herein, while armed with a large knife and accompanied by a co-perpetrator, defendant confronted a young woman. Although the victim apparently was not physically harmed, defendant's conduct certainly posed a threat to her physical well-being and perhaps her life. Under the circumstances of this case, we are unable to say that the trial court erred in sentencing defendant to forty-five years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Thus, we do not find defendant's sentence to be excessive.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] We note that prior to its amendment by Act 70 of 1983, LSA-R.S. 14:64 provided that:

Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. [emphasis added]
Because the crime of theft requires that a defendant have a specific intent "to deprive [another] permanently" of the object of the theft, armed robbery was a specific intent crime. See State v. Bruins, 407 So.2d 685, 687 (La.1981). However, Act 70 of 1983 (which became effective August 30, 1983) redefined armed robbery by substituting "taking" for "theft" and inserting "belonging to another" in the definition of the crime. As a consequence of Act 70 of 1983, the state is no longer required to prove a defendant's intent to permanently deprive; and proof of a defendant's general intent satisfies the intent requirement for the crime. See State v. Hupp, 514 So.2d 271, fn. 2 (La.App. 5th Cir. 1987) and State v. Eason, 460 So.2d 1139, fn. 3 (La.App. 2d Cir.1984), writ denied, 463 So.2d 1317 (La.1985).