849 So.2d 574 (2003)
STATE of Louisiana
v.
Clifford P. JAMES.
No. 2002 KA 2079.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
*578 Walter P. Reed, District Attorney, Covington, Dorothy A. Pendergast, Metairie, for Appellee, State of Louisiana.
Joseph P. Anderson, Jr., Slidell, for Defendant/Appellant, Clifford P. James.
Before: CARTER, C.J., WHIPPLE, and CIACCIO,[1] JJ.
CARTER, C.J.
Defendant, Clifford P. James, was charged by bill of information with aggravated incest, a violation of LSA-R.S. 14:78.1. He pleaded not guilty. The defendant was tried by a six-person jury and found guilty of the responsive offense of attempted aggravated incest, a violation of LSA-R.S. 14:27 and LSA-R.S. 14:78.1. The trial court denied the defendant's motions for new trial and for postverdict judgment of acquittal and sentenced defendant to ten years' imprisonment at hard labor. The trial court suspended five years of the sentence and ordered that defendant, upon his release, be placed under five years of supervised probation with general and special conditions. The defendant's oral motion to reconsider sentence was denied. He now appeals, urging thirteen assignments of error.

FACTS
The defendant married R.M. around February 1998. The matrimonial domicile was in Slidell, Louisiana. R.M.'s daughter and son from a previous marriage, K.C. and N.C., lived with defendant and R.M. Between February 1, 1998, and April 30, 1999, defendant allegedly began engaging in inappropriate behavior with his stepdaughter, K.C., who was five years old when defendant's alleged conduct began. K.C. testified that the defendant touched her "butt" (her buttocks) and her "behinie" (her vaginal area).
When asked how the defendant touched her buttocks, K.C. stated, "Well, I think it was the finger but I don't really know." K.C. further testified, "Itit felt painful when he was touching both of the things, and he was really licking and kissing both of the parts." She later stated, "He did both cheeks and he actually stuck his tongue right in the middle of the crack."
During February or March of 1999, defendant left the family home in Slidell to seek employment in Atlanta, Georgia. He later informed R.M. that he no longer wanted to be married. On December 10, 1999, while riding in the car, R.M. began questioning K.C. because she suspected that the defendant behaved inappropriately with her daughter. K.C. then informed her mother of defendant's conduct. Defendant was ultimately arrested and charged with aggravated incest.

ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, AND THREE
In his first assignment of error, defendant contends that the evidence was insufficient to support his conviction of attempted aggravated incest. In assignments *579 of error numbers two and three, defendant contends that the trial court erred in denying his motions for postverdict judgment of acquittal and new trial, which were also based on the issue of the sufficiency of the evidence. Defendant specifically avers that the videotaped interview of the victim was contaminated, that there were competing explanations for the allegations against him, and that there was a complete absence of physical evidence of sexual abuse.
The standard for reviewing the sufficiency of evidence is set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2788-2790, 61 L.Ed.2d 560 (1979). Under Jackson, the standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson, 99 S.Ct. at 2789; State v. Rosiere, 488 So.2d 965, 968 (La.1986).
Defendant was convicted of attempted aggravated incest. Louisiana Revised Statute 14:78.1, the aggravated incest statute, provides in pertinent part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, aggravated sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
The attempt statute, LSA-R.S. 14:27, provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Thus, in order to support a conviction for attempted aggravated incest, the State is required to prove that defendant specifically intended to engage in an act listed in Subsection B of LSA-R.S. 14:78.1 with his stepdaughter. Such proof is indispensable, as specific intent to accomplish the offense is the sine qua non of the criminal offense of attempt. See State v. Trackling, 609 So.2d 206, 207 (La.1992) (per curiam). Specific intent is a state of mind and as such need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. See State v. Graham, 420 So.2d 1126, 1127 (La.1982); State v. Allen, 94-1941, p. 9 (La.App. 1st Cir.11/9/95), 664 So.2d 1264, 1272, writ denied, 95-2946 (La.3/15/96), 669 So.2d 433.
The trial took place on March 19, 2002. K.C. was nine years of age at the time of the trial. The acts that formed the basis of defendant's conviction occurred between *580 February 1998 and April 1999. Thus, the victim was between the ages of five and six when the incidents occurred.
During the trial, the State presented testimony of Dr. Sue Austin, Detective Shane Rogers, Officer Wanda Campbell, K.C., R.M., and Dr. Scott Benton. The State also admitted a videotaped interview of K.C. conducted by Dr. Austin at the Child Advocacy Center.
Dr. Benton first examined K.C. on June 30, 1998. Her pediatrician, Dr. Angela Smith Duthu, was concerned that K.C. may have been sexually abused. The physical examination revealed no abnormalities. However, Dr. Benton reported that K.C. related "adult sexualized behavior" with her brother and another girl and would "be at risk for future victimization if she incorporated this behavior into her way of being." Dr. Benton examined K.C. again, after the allegations of the instant offense surfaced.[2]
Defendant presented the testimony of Dr. Steven David Thurber to establish alternative explanations for the allegations. Defendant also introduced the testimony of several witnesses, including defendant's two sisters and a friend of the family, who had observed defendant with the children on several occasions and did not notice any inappropriate behavior.
Defendant elicited testimony to show that K.C. had brought a previous claim of sexual abuse against D.O., the son of her biological father's girlfriend, and then recanted. K.C.'s testimony at trial indicated that D.O. pulled down her pants and stuck a pencil eraser in her "private part." She stated that she did not know whether D.O. also did this to her younger brother, N.C. She explained that she told her dad that this incident did not happen only because she was "scared." She further stated that her father was yelling at her, so she said it was not true. This alleged incident occurred when D.O. was eight or nine years old and K.C. was about five. D.O. testified that he never touched K.C. inappropriately. K.C.'s biological father and D.O.'s mother also testified. Neither believed that D.O. inappropriately touched K.C. or N.C. They testified that K.C.'s statements concerning D.O.'s behavior were inconsistent.
During his testimony, defendant denied that he ever inappropriately touched either K.C. or N.C. He discussed the circumstances surrounding the end of his marriage. He also stated that he stopped sending R.M. a portion of his weekly earnings after he informed her that he wanted a divorce.
Defendant argued that the use of anatomically correct dolls "contaminated" the videotaped interview of the victim presented to the jury. He also presented several theories as to why the victim divulged allegations of sexual abuse to the interviewer, including coaching of the victim, maintenance of physical hygiene of the victim by defendant, fantasizing by the victim, and exposure of the victim to pornography.
Defendant further presented several arguments to support the claim that R.M. influenced the victim to make allegations against him. First, he underscores the fact that R.M. filed a petition for divorce on the ground of abandonment approximately two weeks prior to the disclosure of the allegations. The petition for divorce included claims for alimony and settlement of community property. Second, R.M. had *581 been sexually abused as a child. Third, R.M. had a history of depression and use of medication. Finally, R.M. had been strongly counseled against marrying defendant. Defendant also underscores inconsistencies such as R.M.'s testimony that she woke up and found defendant in the victim's bedroom in the middle of the night in February 1999, although she reported to the Office of Community Services that this incident occurred in November 1998.
After reviewing the record, we find that the State presented sufficient evidence at trial to show that defendant attempted to commit a sexual act on K.C. K.C.'s testimony alone provided enough evidence to support a conviction of attempted aggravated incest. A pertinent part of the victim's testimony was as follows.
Q. Okay. When you mean that he was licking and kissing, you mean your behinie as well as your butt?
A. Yes.
Q. Let's start with your behinie. That's the front part in between your legs.
.... Okay. Was he licking you on the outside or the inside?
A. Some parts was in the outside and some parts was in the inside.
Q. Okay. What about your behinie your butt, I should say. You say that he touched and kissed and licked your butt.
....
When you said the middle of the crack, what part of your body is that, do you have a name for it?
A. The hole.
Q. The hole? He actually stuck it by the hole?
A. Yes.
Q. Did he stick ithow did he stick it in theby the hole? Tell me what he did. Do you remember?
A. (Shakes head negatively.)
Q. You don't want to talk about it?
A. No.
The statements made by the victim concerning the acts of defendant during her videotaped interview with Dr. Austin on December 22, 1999, were consistent with her testimony presented at the trial on March 19, 2002, and her disclosures during her examination with Dr. Benton. Defendant's claim that the videotape may have been contaminated is unfounded. The use of dolls came after the victim disclosed the incidents of abuse. We do not find that the manner in which the interview was conducted created a risk of contamination.
The testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. See State v. Williams, 632 So.2d 351, 357 (La.App. 1st Cir.1993), writ denied, 94-1009 (La.9/2/94), 643 So.2d 139. The jury apparently found K.C.'s testimony credible and rejected defendant's trial testimony and hypotheses of innocence. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir.1984). Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. Id. The credibility of witnesses will not be reweighed on appeal. "[T]he Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the factfinder at trial." State v. Juluke, 98-0341, p. 4 (La.1/8/99), 725 So.2d 1291, 1293 (per curiam). The evidence *582 was sufficient to support defendant's conviction for attempted aggravated incest. Assignments of error one, two, and three are without merit.

ASSIGNMENTS OF ERROR NUMBERS FOUR, FIVE, AND SIX
Defendant, in his fourth assignment of error, argues that the trial court erred in refusing to permit, after in camera inspection, discovery and inspection of records of the Ochsner Clinic-Slidell and Dr. Duthu. In assignments of error five and six, defendant contends the trial court erred in allowing, after in camera inspection, only partial discovery and inspection of the DePaul Hospital records, the records of the Family Services of Greater New Orleans, and the records of the Department of Social Services.
Under the United States Supreme Court decision of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the state, upon request, must produce evidence that is favorable to the accused where it is material to guilt or punishment. This rule has been expanded to include evidence that impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial judge for an in camera inspection. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976); State v. Cobb, 419 So.2d 1237, 1241 (La.1982).
The Supreme Court firmly established the test for determining materiality in United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and that test has been applied by the Louisiana Supreme Court. See State v. Rosiere, 488 So.2d 965, 970 (La.1986). The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Bagley, 105 S.Ct. at 3383.
At the outset, we note that the referenced records have been sealed and made available for review on appeal. Thus, we have conducted an independent review of the records in question. Defendant was granted in camera inspection of all requested records, and the trial court made the following records available to defendant: the interview of R.M. by the Office of Community Services (OCS); the OCS interview with N.C.; sheriff's records regarding telephone calls from defendant to the sheriff's office from 10/1/98 to 3/1/99; a document entitled "The CPI Intake Risk Assessment Data Entry"; Dr. Scott Benton's report on his interview with K.C.; and excerpts from the St. Tammany Parish Sheriff's Office Detective Division Resume.
Defendant argues on appeal that R.M.'s medical records were relevant and material. He further argues that the trial court's refusal to permit discovery and inspection of the Ochsner Clinic-Slidell records unfairly prejudiced him in preparing his defense, particularly in view of the fact that R.M. had been sexually abused as a child and had a history of depression and use of medication.
First, we note that the relevance of this information is tentative. Furthermore, *583 the jury was well aware that R.M. had been sexually abused as a child and of her history of use of antidepressant medication. Thus, any further evidence of her condition or past sexual abuse would have been cumulative, and there is no reasonable probability that the result of the proceeding would have been different had it been introduced.
Defendant also states that he was unfairly prejudiced by the trial court's refusing to permit discovery and inspection of the records of Dr. Duthu and permitting only partial discovery and inspection of the DePaul Hospital records and the Family Services of Greater New Orleans records. He states that K.C.'s medical records and N.C.'s history of violent behavior toward his sister were relevant and material.[3] He avers that he may have been able to use the medical records to impeach R.M. and K.C. to a greater extent and that the verdict may have been different.
The testimony presented by the State, however, revealed that no abnormalities were discovered when the victim was physically examined by Dr. Benton on two separate occasions, first after allegations concerning D.O. arose, and second, when the allegations against defendant were made. Dr. Benton stated, in regard to the physical exam conducted after the allegations against defendant, that the "exam showed that [K.C.] was a prepubital little girl who had normal female parts and a normal anus." He also stated that "her physical exam on that day was within normal limits" and "neither confirmed nor ... den[ied] what she told me had happened." As aforementioned, Dr. Duthu first referred K.C. to Dr. Benton because she suspected that K.C. might have been sexually abused. The defense was able to cross-examine Dr. Benton, and the results of his physical examination were favorable to defendant and made known to the jury. Furthermore, the trial court ordered that the progress notes from interviews with K.C. and the records of DePaul Tulane Behavioral Health Center on N.C. be made available to both counsel.
In assignment of error number six, defendant argues that the trial court erred in permitting only partial discovery, following in camera inspection, of the Department of Social Services's records and St. Tammany Parish Sheriff's Office Detective Division Resume. Defendant states that his inability to inspect these records in their entirety may have unfairly prejudiced him in attempting to show the unreliability of R.M.'s and K.C.'s trial testimony.
Our independent review of the documents in question reveals no abuse of discretion in the trial court's decisions as to discovery. The trial court did not deny defendant discovery of any material, favorable, or exculpatory evidence. For the foregoing reasons, we find no merit in these assignments.

ASSIGNMENT OF ERROR NUMBER SEVEN
In the seventh assignment of error, defendant argues that the trial court erred in refusing to permit him to adduce into evidence, except via proffer, information regarding N.C.'s history of violent behavior toward his sister, K.C. Defendant specifically avers that N.C.'s history of violent behavior toward his sister establishes that he could have, at all times pertinent to the allegations by K.C. against defendant, utilized duress, menace, psychological intimidation and influence by virtue *584 of a position of control over K.C. He further claims that N.C., as a "facilitator" of the allegations against him, is a person whose history of violent behavior toward his sister is relevant and material to the trial.
Incident report # XXXXXXXXXX of November 20, 1998, pertaining to N.C., was produced by the St. Tammany Parish Sheriff's Office, pursuant to defendant's subpoena duces tecum, for in camera inspection by the trial court. Following in camera inspection, the trial court permitted full discovery and inspection by defendant of the incident report. The incident report, in pertinent part, states:
Having problems w/7 yo son threatening to kill his mother
Beats on his 5 yo sister
Tried to stab sister 1 month ago
Defendant claims that this report established that barely a year prior to the allegations by K.C., N.C. had committed acts of violence against his sister. He avers that the incident report suggests competing explanations for the allegations by K.C. against him and, therefore, constitutes both impeachment and exculpatory evidence. Defendant attempted to use this report to attack the credibility of K.C.
N.C. was not called as a witness. The trial court declined to admit the report, ruling that the information in the report was not relevant. Defendant later proffered the incident report and made it available for appellate review.
A witness may be cross-examined on any matter relevant to any issue in the case. La.Code Evid. art. 611 B. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. Code Evid. art. 401. All relevant evidence is generally admissible. La.Code Evid. art. 402. The trial court has considerable discretion in determining the relevancy of evidence. The ruling will not be disturbed absent an abuse of discretion. State v. Miles, 402 So.2d 644, 647 (La.1981).
Upon reviewing the incident report and the record, we find that the trial court did not abuse its discretion in ruling that the above report was inadmissible. Defendant has failed to link any acts of violence on the part of N.C. to the disclosures made by K.C. that form the basis of this case. K.C. clearly testified that no one told her to make these claims. Even if we were to find error in the trial court's ruling as to the admissibility of this evidence, it is clear that the impact of the excluded evidence would have been minimal and that exclusion of the evidence was harmless beyond a reasonable doubt. See Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); see also LSA-C.Cr.P. art. 921. This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER EIGHT
Defendant avers, in the eighth assignment of error, that the trial court erred in permitting Dr. Benton's testimony regarding K.C.'s complaint of sexual abuse by defendant. Defendant specifically states that Dr. Benton's testimony regarding K.C.'s allegations effectively bolstered K.C.'s credibility in the eyes of the jury. Defendant further contends that this error deprived him of his basic fundamental right of due process.
Louisiana Code of Evidence article 803(4) allows a hearsay exception for statements made for the purposes of medical treatment and medical diagnosis in connection with treatment. Defendant argues that portions of Dr. Benton's testimony consisting of hearsay statements by the *585 victim concerning allegations of sexual acts by defendant exceeded the permissible scope of article 803(4).
Dr. Benton examined K.C. on two separate occasions. The second and pertinent examination took place on January 7, 2000. The doctor conducted a full pediatric examination and a sexual abuse examination. During the examination, K.C. stated that defendant touched her private parts and "licked and kissed my butt." K.C. also told him that "the demon came out and went in [her] butt." Dr. Benton stated that he was not sure what K.C. meant when she made this statement, and his attempts at clarification were futile. The doctor examined K.C.'s vaginal and anal areas. The physical examination did not reveal any physical abnormalities.
Dr. Benton testified that it is his practice to take a complete oral history from the child to determine "any issues that the child might have that I might be able to help them with." Thus, Dr. Benton's questioning K.C. about the sexual abuse served a diagnostic purpose.
However, even if we were to find that the hearsay statements went beyond the scope of article 803(4), hearsay testimony that is improperly introduced into evidence will be considered harmless if it is cumulative and corroborative of other properly admitted evidence and did not contribute to the verdict. State v. Reed, 97-0812, p. 11 (La.App. 1st Cir.4/8/98), 712 So.2d 572, 578-579, writ denied, 98-1266 (La.11/25/98), 729 So.2d 572. In the instant case, we find that the admission of the hearsay statements of Dr. Benton did not contribute to defendant's conviction. See Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The State also presented the testimony of the victim that contained allegations consistent with those disclosed to Dr. Benton. Furthermore, the State introduced the videotaped interview of the victim with Dr. Austin. Thus, the hearsay statements included in the doctor's testimony were cumulative of the direct evidence and the statements made by the victim during the videotaped interview. The victim's testimony provided detailed descriptions of what she believed defendant did to her. The statements were consistent with the information that she relayed to Dr. Austin. As previously determined, the testimony of the victim alone was sufficient to establish defendant's specific intent to commit the crime of aggravated incest and the commission of specific acts in furtherance thereof. For the foregoing reasons, we find that any error as to the admission of the testimony of Dr. Benton was harmless beyond a reasonable doubt. This assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS NINE, TEN, AND ELEVEN
In assignment of error number nine, defendant avers that the trial court failed to properly consider the sentencing guidelines contained in LSA-C.Cr.P. art. 894.1. In the tenth assignment of error, he contends that the sentence imposed by the trial court was constitutionally excessive. Accordingly, he argues in the eleventh assignment of error that the trial court erred in denying his oral motion to reconsider sentence.
Article I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of sentence is a reviewable question of law. See State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ *586 denied, 546 So.2d 169 (La.1989). In other words, a sentence may be both within the statutory limits and constitutionally excessive.
A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether or not the penalty is so disproportionate as to shock our sense of justice. A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. Payne, 540 So.2d at 524.
To prevent the possible imposition of excessive punishment and to guide the trial court in its sentencing tasks, article 894.1 sets forth factors that justify a sentence of imprisonment and other factors that tend to indicate suspension of sentence or probation as more appropriate. State v. Vampran, 459 So.2d 1333, 1335 (La.App. 1st Cir.1984). In imposing sentence, a trial court must comply with the mandatory requirements of the article and individualize the sentence by stating for the record the considerations taken into account and the factual bases therefore. Id. Article 894.1 does not, however, require the trial court to list all of the factors listed therein to which it accorded weight in determining whether to impose a sentence of imprisonment. Id.
In the instant case, the trial court imposed a sentence of ten years at hard labor. The trial court suspended five years of the sentence and ordered that defendant be placed under supervised probation upon release, with general and special conditions. Louisiana Revised Statute 14:78.1 D provides that a person convicted of aggravated incest shall be fined an amount not to exceed $50,000, or imprisoned, with or without hard labor, for a term not less than five years nor more than twenty years, or both. As defendant was convicted of the responsive offensive of attempted aggravated incest, we must also refer to LSA-R.S. 14:27, which provides in subsection D(3):
In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed onehalf of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
Thus, the sentenced imposed by the trial court in the instant case was the statutory maximum length of ten years. The trial court did not, however, impose a fine.
Prior to sentencing, the trial court reviewed a presentence investigation report. At the sentencing hearing, defendant introduced the testimony of three witnesses. Those witnesses included defendant's two sisters and his brother-in-law. Defendant also introduced an affidavit from Jeffrey R. Barnett, the director of human resources of Atlanta Freight Line Truck Sales, Inc., defendant's former employer. The affidavit stated that Mr. Barnett would consider defendant for future reemployment. The trial court did not state its reasons for sentencing.
A trial court has broad discretion in the imposition of sentences; however, this discretion is not unbridled. State v. Tilley, 400 So.2d 1363, 1366 (La.1981); State v. Jackson, 98-0004, p. 11 (La.App. 1st Cir.11/6/98), 724 So.2d 215, 222, writ denied, 98-3056 (La.4/1/99), 741 So.2d 1283. As a general rule, maximum or near maximum sentences are to be reserved for the worst offenders and the worst offenses. *587 State v. Soco, 441 So.2d 719, 720 (La.1983); State v. Adams, 525 So.2d 1256, 1260 (La. App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988). In the instant case, we find that the trial court did not abuse its discretion in imposing sentence. Although a ten-year sentence was imposed, the trial court suspended one-half of the sentence, so that defendant will in effect be imprisoned for a total of five years. This is onehalf of the maximum years of imprisonment allowed statutorily. Furthermore, as previously noted, the trial court could have imposed a fine of up to $25,000. The trial court knew defendant was a first offender. The trial court was also aware of the sordid facts of the instant offense and the effects of defendant's act on the victim. The trial court denied defendant's oral motion for reconsideration of sentence based on its reading of the record and the P.S.I. Based upon the record and the evidence from the trial court, we are unable to declare that the trial court manifestly abused its discretion in sentencing defendant or in denying defendant's oral motion to reconsider sentence. This court will not set aside the sentence as constitutionally excessive. These assignments lack merit.

ASSIGNMENT OF ERROR NUMBER TWELVE
In the twelfth assignment of error, defendant contends that the trial court erred in denying his oral motion to fix postconviction bail. This issue is more properly and timely raised by invoking the supervisory jurisdiction of this court pursuant to article 343 of the Code of Criminal Procedure. See State v. Simmons, 414 So.2d 705, 711 (La.1982). However, we will consider defendant's claim as an assignment of error.
Louisiana Code of Criminal Procedure article 332 C provides that postconviction bail shall be imposed if a sentence of five years or less is actually imposed, but if the sentence exceeds five years, the trial court has discretion whether to allow bail. See State v. Strickland, 398 So.2d 1062, 1068 (La.1981). Defendant contends that a sentence of five years' imprisonment was actually imposed by the trial court and thus postconviction bail should have been fixed.
Although defendant herein received the benefit of the suspension of one-half of the sentence imposed, the trial court, nonetheless, sentenced him to ten years' imprisonment. Thus, bail pending appeal was a matter within the trial court's discretion. The trial court did not abuse this discretion in denying bail pending appeal in this case. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THIRTEEN
In his thirteenth and final assignment of error, defendant asks that we review the record for errors discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
This court routinely reviews the record for errors patent, whether or not a defendant makes such a request. Under LSA-C.Cr.P. art. 920(2), our patent-error review is limited to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review, we find no errors patent on the face of the record in these proceedings.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Hon. Philip Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We shall discuss the results of the second examination in our treatment of assignment of error number eight.
[3] We will address the relevance of evidence of the alleged violent behavior of N.C. in our discussion of assignment of error number seven.