## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 KA 0846

STATE OF LOUISIANA

VS.

SEAN WILKINSON

Judgment rendered: **MAR 0 6 2023**

* * * * *

On Appeal from the
Eighteenth Judicial District Court
In and for the Parish of Iberville
State of Louisiana
No. 1207-17, Division D

The Honorable Elizabeth A. Engolio, Judge Presiding

* * * * *

Kevin Vincent Boshea
Metairie, Louisiana
Mandeville, Louisiana

Attorney for Appellant
Sean Wilkinson

Antonio M. "Tony" Clayton
District Attorney
Plaquemine, Louisiana
Terri Russo Lacy
Assistant District Attorney
Port Allen, Louisiana

Attorneys for Appellee
State of Louisiana

* * * * *

BEFORE: McCLENDON, HOLDRIDGE, AND GREENE, JJ.

**HOLDRIDGE, J.**

The defendant, Sean Wilkinson, was charged by grand jury indictment with eleven counts of first degree rape (of a victim under the age of thirteen years), a violation of La. R.S. 14:42(A)(4), and one count of indecent behavior with juveniles, a violation of La. R.S. 14:81(A)(1). He pled not guilty and, following a jury trial, was found guilty as charged on all counts. For each of the eleven counts of first degree rape, the defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. For the indecent behavior with juveniles conviction, the defendant was sentenced to twenty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The trial court ordered all counts of aggravated rape to run concurrently.[1] The defendant now appeals, designating five assignments of error. We affirm the convictions and sentences.

## FACTS

Hannah and her husband had two daughters, J.W. and Jo.W.,[2] and a son. Jo.W. is one year older than J.W. Hannah's husband died, and she married the defendant in 2011. The defendant adopted Hannah's three children. The defendant also had children from a previous relationship, and the defendant and Hannah had a child together. They lived in Breaux Bridge in St. Martin Parish for a few years. Just prior to the beginning of J.W.'s fourth-grade school year, the family moved to a house in Plaquemine in Iberville Parish.

---

[1] We find that all of the sentences are concurrent even though the trial court did not specifically mention how the indecent behavior with juveniles sentence was to be served. Despite Jo.W.'s counts not being based on the same transaction or occurrence, as well as several of J.W.'s aggravated counts not being based on the same transaction or occurrence, the trial court nevertheless ordered all of the aggravated rape sentences to run concurrently. Accordingly, it appears the trial court intended for the indecent behavior with juveniles sentence to run concurrently as well. See La. C.Cr.P. art. 883; **State v. Dorsey**, 2022-196 (La. App. 3 Cir. 10/5/22), 349 So.3d 703, 709-10.

[2] Victims of sex offenses are referred to by their initials. See La. R.S. 46:1844(W).

2

On September 14, 2017, when J.W. was eleven years old, the school counselor at J.W.'s school received information that the defendant had molested J.W. The counselor spoke to Hannah about the allegations; thereafter, J.W. went to live with her biological grandparents. On September 19, 2017, J.W.'s grandmother took J.W. to the emergency room at Children's Hospital where she was seen by Dr. Hitesh Chheda, a pediatrician, who discussed with J.W. the alleged sexual abuse. Dr. Chheda testified that J.W. informed him that the defendant sexually abused her for approximately the last six years. J.W. told the doctor she had informed her mother about the abuse on three different occasions.

J.W. was interviewed at a Children's Advocacy Center (CAC) on September 18, 2017. During this lengthy interview, J.W. recounted numerous occasions where the defendant raped her from the ages of about six years old to eleven years old. The instances of sexual abuse occurred in the houses in both St. Martin Parish and Iberville Parish. At the trial, J.W. testified on cross-examination about several of her encounters with the defendant. On September 22, 2017, Jo.W. gave a CAC interview wherein she recounted an instance when the defendant stuck his penis in her mouth and a separate instance when the defendant molested her. Jo.W. was ten and eleven years old, respectively, during the encounters. Both encounters occurred in the house in Plaquemine.

The defendant testified at trial. He denied any wrongdoing, and stated that he never inappropriately touched J.W. or Jo.W.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues there was no evidence that the eleven guilty verdicts for aggravated rape were unanimous.

In **Ramos v. Louisiana**, 590 U.S. __, 140 S.Ct. 1390, 1397, 206 L.Ed.2d 583 (2020), the United States Supreme Court held that the right to a jury trial under the

3

Sixth Amendment of the United States Constitution, incorporated against the States by way of the Fourteenth Amendment of the United States Constitution, requires a unanimous verdict to convict a defendant of a serious offense. In support of his position, the defendant cites **State v. Norman**, 2020-00109 (La. 7/2/20), 297 So.3d 738, 738-39 (*per curiam*), writ denied, 2020-00109 (La. 2/17/21), 310 So.3d 1149, where, because the trial court ceased polling the jury after the first ten jurors and it was thus unknown if the verdict was unanimous, the supreme court remanded the case to the trial court and ordered it to conduct further proceedings to ascertain whether the verdict was unanimous.

**Norman** is distinguishable. In the instant matter, the verdict sheet set out each of the eleven counts for first degree rape, and the verdict of "Guilty of first degree rape" was handwritten on the blank line as to each count. Finding the verdict sheet in proper form, the trial court asked the clerk to read the verdicts. The clerk read aloud each of the guilty verdicts. The trial court asked the jury foreperson if this was his verdict to which he replied, "Yes, ma'am." Defense counsel did not request to poll the jury. See **State v. Bradley**, 53,550 (La. App. 2 Cir. 11/18/20), 307 So.3d 369, 373-74 (finding that because the record did not indicate defendant's four convictions for second degree rape were by a non-unanimous jury vote, and that unlike the circumstances in **Norman**, the record demonstrated that defense counsel made the conscious decision not to poll the jury regarding those convictions, the matter was deemed to be waived). Moreover, in its jury instructions in the instant matter, the trial court specifically informed the jury that a separate verdict was required for each count and that "[a]ll twelve jurors must concur to reach a verdict in this case."

Accordingly, this assignment of error is without merit.

4

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues the trial court erred in allowing evidence of lustful disposition in cases involving sexual offenses pursuant to La. C. E. art. 412.2.

Louisiana Code of Evidence article 412.2 provides in pertinent part:

> A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
>
> B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.

The State filed a pretrial notice of intent and supporting memorandum to introduce similar crimes, wrongs or acts pursuant to La. C.E. art. 412.2. Specifically, the State sought to introduce other instances of when the defendant raped J.W. in their house in St. Martin Parish. The defendant filed no opposition or motion in limine to the State's notice of intent. At no time before, during, or after trial did the defendant object to the State's introduction of Article 412.2 evidence. In particular, the defendant did not object to, or seek to redact, any of the statements made by J.W. in the CAC interview wherein J.W. discussed several instances of sexual abuse by the defendant in the house in St. Martin Parish.

An irregularity or error cannot be availed of after the verdict unless it was objected to at the time of occurrence. La. C.Cr.P. art. 841(A). In order to preserve an issue for appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. **State v. Boyette**, 52,411 (La. App. 2 Cir. 1/16/19), 264 So.3d 625, 638-39.

5

Accordingly, because the defendant did not make any pretrial objections, file any motions to exclude the La. C.E. art. 412.2 evidence, or raise any contemporaneous objections at trial, he has failed to preserve this matter for review on appeal. See **State v. Robinson**, 51,830 (La. App. 2 Cir. 2/28/18), 246 So.3d 725, 734-35, writ denied, 2018-0573 (La. 2/11/19), 263 So.3d 897; **State v. Dilosa**, 2001-0024 (La. App. 1 Cir. 5/9/03), 849 So.2d 657, 670-71, writ denied, 2003-1601 (La. 12/12/03), 860 So.2d 1153.

This assignment of error is without merit.

## ASSIGNMENTS OF ERROR NOS. 3 and 4

In his third assignment of error, the defendant argues the evidence was insufficient to convict him of eleven counts of first degree rape and one count of indecent behavior with juveniles. In his fourth assignment of error, the defendant argues the trial court erred in denying his motions for "judgment notwithstanding the verdict" and new trial.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. C.Cr.P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence

excludes every reasonable hypothesis of innocence.  See **State v. Patorno**, 2001-2585 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 144.

Louisiana Revised Statutes 14:42 provides in pertinent part:

> A.  First degree rape is a rape committed . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> \*　　　　\*　　　　\*　　　　\*
>
> (4)  When the victim is under the age of thirteen years.  Lack of knowledge of the victim's age shall not be a defense.

At the time of the offenses, Louisiana Revised Statutes 14:41 provided:

> A.   Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
> B.  Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
> C.  For purposes of the Subpart, "oral sexual intercourse" means the intentional engaging in any of the following acts with another person:
> (1)  The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.
> (2)  The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.

Indecent behavior with juveniles is the commission with the intention of arousing or gratifying the sexual desires of either person of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons.  See La. R.S. 14:81(A)(1).

The defendant does not address any one specific count of first degree rape. He argues instead that the only evidence was the CAC interview of J.W.  He further asserts there was no physical, medical, or witness corroboration of the claims made by J.W.  According to the defendant, given the serious assaults that J.W. described occurred on "countless occasions, it is logical to expect some level of physical

7

damage" to J.W to be present. Regarding Jo.W.'s claims,[3] the defendant argues that no evidence corroborated her allegations and that her statements contradicted one another.

The videotape of a CAC interview of a minor, a protected person, is available for introduction as evidence in a criminal proceeding. See La. R.S. 15:440.1; 15:440.2(A)(3) and (C)(1). Such videotape of a protected person may be offered in evidence against a defendant. See La. R.S. 15:440.4. J.W.'s CAC interview, offered into evidence at trial and played for the jury, established the ten counts of first degree rape. In the interview, J.W. indicated that all of the following acts of first degree rape occurred at the house in Plaquemine (Iberville Parish). The incidents occurred when J.W. was nine, ten, and eleven years old.

On one occasion, the defendant told J.W. to go shower in the master bathroom. While J.W. was showering, the defendant got in the bathtub with her and had vaginal sex with her. The defendant also performed oral sex on her and made her perform oral sex on him. This encounter constituted three counts of first degree rape. On another occasion, the family watched a scary movie in the living room. The defendant then took J.W. to the game room and had vaginal sex with her on the floor. He also made her perform oral sex on him. The defendant ejaculated in her mouth. J.W. went to the bathroom to spit out the "white stuff." The defendant then went into the bathroom and had vaginal sex with her again. He also performed oral sex on her. This encounter constituted four counts of first degree rape. On another occasion, on the defendant's bed in the master bedroom, the defendant had vaginal sex with J.W. He also made her perform oral sex on him. This encounter constituted two counts of first degree rape. On another occasion, the defendant had vaginal sex

---

[3] The indictment refers to the victim of the ten counts of first degree rape as J.W. and to the other victim as "Jo.W." In brief, the defendant refers, respectively, to these victims as, "Ms. Ja.W" and "Ms. J."

with J.W. in the closet of the master bedroom. This encounter constituted one count of first degree rape. J.W. was cross-examined about several of these instances.

While the above satisfied the ten charges of the first degree rape of J.W. filed by the State, J.W. in the CAC interview referred to many more instances of the defendant raping her in the house in Plaquemine. These included an occasion where the defendant was assembling a futon in the game room. He asked J.W. to bring him a wrench. When she returned, the defendant locked the door and had vaginal sex with her. J.W. stated in the interview there were a "bunch of other times" where the defendant had vaginal sex with her. She also indicated that the defendant put his penis in her mouth every time they had sex.

In her first CAC interview, Jo.W. indicated that no one ever inappropriately touched her, and she had never touched them inappropriately. In her second CAC interview four days later, Jo.W indicated that when she was about ten years old, she was sleeping on the sofa when she was awakened by the defendant sticking his penis in her mouth and moving it back and forth. Jo.W. also indicated that when she was about eleven years old, she was wearing blue shorts and laying on the floor in the game room. The defendant had Jo.W. lay on her side. The defendant laid down facing her, wrapped his arms around her and, with his groin close to her, moved his penis back and forth. Later she noticed a wet spot on the inside of her leg and on her shorts. When asked how her shorts got damp, Jo.W. indicated she thought the defendant may have "ejected" a little bit. When asked why she made a disclosure this time, Jo.W. indicated she was more comfortable and that she was afraid to say something last time. Jo.W. was very briefly questioned on direct examination, and defense counsel chose not to cross-examine her.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters,

9

the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. **State v. Ford**, 2017-0471 (La. App. 1 Cir. 9/27/17), 232 So.3d 576, 586, writ denied, 2017-1901 (La. 4/22/19), 268 So.3d 295. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. **State v. Mitchell**, 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. **State v. Nixon**, 2017-1582 (La. App. 1 Cir. 4/13/18), 250 So.3d 273, 291, writ denied, 2018-0770 (La. 11/14/18), 256 So.3d 290.

It is true that the only direct evidence of the sexual abuse was the testimony of J.W. and Jo.W. The testimony of a sexual assault victim alone, however, is sufficient to support a rape conviction, even if the State does not introduce medical, scientific, or physical evidence to prove that the defendant was the individual who committed the crime. **State in Interest of E.S.**, 2018-01763 (La. 10/22/19), 285 So.3d 1046, 1057; see **State v. Orgeron**, 512 So.2d 467, 469 (La. App. 1 Cir. 1987), writ denied, 519 So.2d 113 (La. 1988). The jury's verdicts reflected the reasonable conclusion that, based on the testimony of J.W. and Jo.W., the defendant raped his adopted daughters. In finding the defendant guilty, the jury clearly rejected the defendant's theory of innocence. See **State v. Captville**, 448 So.2d 676, 680-81 (La. 1984); **State v. Brooks**, 2017-1755 (La. App. 1 Cir. 9/24/18), 258 So.3d 944, 951, writ denied, 2018-1718 (La. 2/25/19), 266 So.3d 289, judgment vacated on other grounds, ___ U.S. ___, 140 S.Ct. 2712, 206 L.Ed.2d 849 (2020).

10

After a thorough review of the record, we find the evidence supports the jury's unanimous verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of each count of the aggravated rape of J.W. and Jo.W. and indecent behavior with juveniles of Jo.W. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*).

While the defendant's fourth assignment of error states the trial court erred in the denial of the motion for "a judgment notwithstanding the verdict" and the motion for new trial, he addresses these arguments in the third assignment of error; that is, he argues that the evidence was insufficient and that the proper venue of Iberville Parish was not established. J.W. testified on cross-examination that her family, including Jo.W., moved to Plaquemine before her fourth grade year and lived there for at least two years. In her CAC interview, J.W. discussed the many instances of rape that occurred in the "new house" in Plaquemine. Accordingly, the testimony clearly established that Iberville Parish was the proper venue. See La. C.Cr.P. art. 611(A). Moreover, the issue of venue is not properly before us because the defendant failed to file the required pretrial motion to quash. See La. C.Cr.P. art. 615; **State v. Ford**, 232 So.3d at 584.

These assignments of error are without merit.

## ASSIGNMENT OF ERROR NO. 5

In his fifth assignment of error, the defendant argues the trial court erred in allowing into evidence the suicide attempt of the defendant.

In its direct examination of Lieutenant Christopher Couty, with the Iberville Parish Sheriff's Office, the State adduced evidence that, upon learning of the allegations against him, the defendant went to the woods with a handgun near the

11

area of Bayou Sorrel Locks. After the defendant threatened suicide, the police went to the scene. Lieutenant Couty eventually convinced the defendant to put down his gun and come out of the woods.

The defendant asserts that this evidence was irrelevant, highly prejudicial, and non-probative, and should have been excluded. The defendant made no objections to Lieutenant Couty's testimony regarding the defendant's threatened suicide or of his conversations with the defendant while at the scene.[4] Because he failed to lodge a contemporaneous objection to the testimony, he failed to preserve for review any alleged error in its admission. The defendant is precluded from raising this issue on appeal. La. C.E. art. 103(A)(1); La. C.Cr.P. art. 841(A). See State v. Prejean, 2009-0878 (La. App. 1 Cir. 10/27/09), 2009 WL 3448286 *8 (unpublished).

This assignment of error is without merit.

## PATENT ERROR REVIEW

The defendant asks that we review the record for errors discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. This court routinely reviews the record for errors patent, whether or not a defendant makes such a request. Under La. C.Cr.P. art. 920(2), our patent-error review is limited to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review, we find no reversible patent errors. See State v. James, 2002-2079 (La. App. 1 Cir. 5/9/03), 849 So.2d 574, 587.

---

[4] During the State's direct examination of Lieutenant Couty, the defendant lodged a single objection regarding anything the Acadian paramedics may have discussed with the defendant. Before any ruling, the prosecutor rephrased the question, and no objection was made.

12

## CONCLUSION

For the foregoing reasons, we affirm the convictions and sentences of the defendant, Sean Wilkinson.

**CONVICTIONS AND SENTENCES AFFIRMED.**

13